H. P. THRONSON, Plaintiff and Appellant, v. SARAH E. BLOUGH, Defendant, and M. I. BROCKETT, an Incompetent, by C. C. Wysong, His Guardian *ad Litem*, Intervener, Respondents.

(166 N. W. 132.)

In an action brought to foreclose a mortgage where a defendant answered, setting up that the mortgage was given to evidence a trust of the land which had been conveyed to the mortgagor by her allegedly incompetent son, and where the alleged incompetent filed a complaint in intervention by his guardian *ad litem*, held:

**Foreclosure of mortgage — action for — defense — mortgage as evidence of trust — incompetency of beneficiary — findings of trial court — evidence — supported by.**

1. That the evidence supports the findings of the trial court to the effect that the intervener was incompetent to contract, and that such incompetency was known to the plaintiff.

**Third person — real party in interest — incompetency of such party — set up by answer — appearance — by guardian ad litem.**

2. Where the defendant in a foreclosure proceeding sets up facts indicating that a third person is the real party in interest, and where such third person is incompetent, he may be henceforth considered a party so as to authorize his appearance in the suit by a guardian *ad litem*, under § 7401, Comp. Laws 1913.

**Rescission of contract — by person of unsound mind — when authorized.**

3. Sections 4343 and 4344, Comp. Laws 1913, which authorize rescission of contracts made by persons of unsound mind, the latter, where persons are not entirely without understanding, construed in connection with §§ 5943 et seq. Comp. Laws 1913, and *held* to authorize a rescission under the evidence in the instant case.

Opinion filed December 14, 1917.

Appeal from District Court of Ward County, *K. E. Leighton*, J. Affirmed.

*Francis J. Murphy*, for appellant.

NOTE.—The great weight of authority seems to be in accord with the case of Thronson v. Blough, to the effect that a mortgage of an incompetent person is voidable only, and may be enforced under proper circumstances, as will be seen by an examination of a note in 42 L.R.A. (N.S.) 343, on right to enforce mortgage given by an incompetent who has not been declared such.

This action being one to foreclose a real estate mortgage and to make a collection, and not a sale of collateral, the court could not appoint a guardian *ad litem* for one not a party to such action. Comp. Laws 1913, § 6213; Farmers Bank v. Riedlinger, 27 N. D. 318, 146 N. W. 556.

Such appointment cannot be had when the incompetent is not a party to the original action. Comp. Laws 1913, §§ 7401, 8886, 8887.

The note secured by the mortgage is negotiable and was transferred before maturity, and plaintiff took it free from defenses. Comp. Laws 1913, § 6937; Second Nat. Bank v. Werner, 19 N. D. 485, 126 N. W. 100.

Neither duress, fraud, nor undue influence is alleged, and there is an entire want of proof of such matters. Persons not entirely devoid of understanding, whose incapacity has not been judicially determined, may contract, and their contracts are not void. Comp. Laws 1913, §§ 5836, 5844 to 5854; Nelson v. Thompson, 16 N. D. 295, 112 N. W. 1058; Wood v. Pehrsson, 21 N. D. 357, 130 N. W. 1010.

*Palda & Aaker,* and *I. M. Oseth,* for intervener and respondent.

The original foreclosure was entirely for the purpose of foreclosing a mortgage given as collateral security. All actions shall be tried between the real parties in interest, and if one such party is omitted, and that party happens to be an incompetent, the count has ample power to appoint a guardian *ad litem* and permit intervention. Comp. Laws 1913, §§ 7412, 7413.

BIRDZELL, J. This is an appeal from a judgment entered in the district court of Ward county, in an action to foreclose a real estate mortgage. The judgment of the district court was in favor of the defendant and intervener. The facts are as follows:

On or about the 6th day of May, 1912, the defendant executed and delivered to her son, M. I. Brockett, a promissory note for $4,000 due five years after date. This note was secured by a real estate mortgage upon the southwest quarter of section 33, township 160, north of range 89, west of the fifth principal meridian. Thereafter, to wit, on the 22d day of August, 1912, Brockett indorsed the note and assigned the mortgage to the plaintiff in this action. Action having been brought for the foreclosure of the above mortgage, the defendant Sarah Blough

answered, setting up the alleged incompetency of Brockett, and that the transaction resulting in the execution of the note and mortgage was in reality a trust transaction whereby M. I. Brockett had transferred to her the title to the land covered by the mortgage, and she had executed in return the note and the mortgage as an evidence of her trust obligation to hold the land for Brockett. She further alleged that during 1911 and 1912 Brockett worked as janitor for the Kenmare National Bank, of which Thronson, the plaintiff, was cashier; and that during this period plaintiff had become fully acquainted with Brockett, knew his mental condition, and was aware of his incompetency to transact ordinary business.

On April 30, 1914, one C. C. Wysong was appointed guardian *ad litem* of Brockett, and later, as such guardian, filed a complaint in intervention, setting up substantially the same facts as were contained in the answer of the defendant.

It appears that the transaction in connection with which the plaintiff became the assignee of the note and mortgage was a land sale whereby Brockett purchased from Thronson for about $1,600 a quarter section of land lying in some sand hills in a comparatively unimproved part of the country; the note and mortgage being assigned to Thronson as security for an unpaid portion of the purchase price, amounting to $600, and for an additional item of personal indebtedness of $226.

The legal questions raised upon this appeal relate wholly to the guardianship and intervention, and will be considered after disposing of the vital question of fact which relates to the intervener's incapacity.

The trial court found that Brockett had been feeble-minded for more than five years and incompetent, and was not of sufficient mind to understand and transact ordinary business; and that the defendant Sarah Blough, mother of Brockett, had had the care and custody of him since his childhood; and that the incompetency of Brockett arose from an illness with which he was afflicted when a small child. There is ample testimony in the record to warrant this finding. His mother testified that he had been crippled ever since he was ten years of age; that he was for two years in an institute for feeble-minded; that he was subject to fits; that he is inclined to fads, or, to use her language, "sometimes he goes horse crazy, sometimes he goes sheep crazy, and sometimes hog crazy; sometimes he is going to Idaho, and sometimes he is

crazy to go there in the mountains." That "he got crazy about an automobile, but I talked him out of it, and then I got him quieted down on that, and the first thing the news came 'to me he had bought a thirty-five horse power engine and was going out to break prairie. . . ." ·

There is much more testimony in the record, all going to show that the matter of his incompetency was generally known about Kenmare, where he resided, and that his mother had frequently had occasion to settle or rescind transactions in which he had been duped, and to notify business men not to deal with him. In the face of this evidence, and without the opportunity to observe the demeanor of the alleged incompetent which the trial court had upon the trial of this action, we cannot conclude that the finding of incompetency is not proper. On the contrary, it appears to be well supported in the evidence.

In view of the relation of employer and employee between the plaintiff and Brockett for a considerable period prior to the transaction in question, there can be no doubt that the trial court was justified in finding that the plaintiff knew of Brockett's incompetency.

The appellant argues that the lower court erred in appointing a guardian *ad litem* for Brockett to appear in this action. It is contended that, inasmuch as the plaintiff had a right to foreclose the mortgage which he held as collateral (Farmers Bank v. Riedlinger, 27·N. D. 318, 146 N. W. 556), and inasmuch as the only necessary party defendant in this action was the mortgagor, the court was without jurisdiction of Brockett, who was not a party, and that consequently the appointing· of a guardian *ad litem* under § 7401, Comp. Laws 1913, was not authorized.

After the defendant had answered, setting up the facts with respect to the transaction resulting in the mortgage, it would have been improper for the court to have proceeded further with the foreclosure proceeding without making Brockett a party defendant, unless his rights were to be cared for under § 7397, Comp. Laws 1913, considering Mrs. Blough as the trustee of an express trust. In any event, it is apparent that the answer of the defendant discloses that the real party in interest was Brockett; and, for the purpose of having him represented directly by a guardian *ad litem*, he may be considered from that time forth as a defendant.

It is also contended that the transaction between Brockett and Thron-

son cannot be rescinded because of certain statutes in North Dakota. Section 4343, Comp. Laws 1913, provides that a person entirely without understanding has no power to make a contract of any kind. And § 4344 provides that a conveyance or other contract made by a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, "is subject to rescission as provided in the chapter of rescission of this Code." Section 5934, which is part of the chapter governing rescission, provides that a party to a contract may rescind the same in certain cases only, and mentions in five subdivisions various situations warranting rescission. Incompetency of a party to contract is not mentioned in this section, and from this is argued that our statutes failed to provide the intervener a remedy by way of rescission. This interpretation of the statute is, in our opinion, unwarranted. To construe the various sections relating directly to the rescission of contracts as not applicable to rescission for incapacity as authorized by § 4344 is to render this section entirely nugatory. Section 4344 is ample authority for the rescission of a contract for mental incapacity, and the reference therein to the chapter of rescission is merely for the purpose of subjecting the rescission to the general rules governing the operation of this remedy.

We are of the opinion that the judgment of the trial court is correct, and should be affirmed. It is so ordered.

ROBINSON, J. (concurring). This is an action to foreclose a mortgage for $4,000 and interest at 7 per cent from May 6, 1912. The plaintiff appeals from a judgment against him. The judgment is that the mortgage and the assignment of the same be canceled because there was no consideration for either the mortgage or the assignment, and because the latter was made by a feeble-minded person. The mortgage is made by defendant Sarah E. Blough to her incompetent son, to secure a promissory note to him of the same date for $4,000, and interest. The mortgage is on a good quarter section of land, which the incompetent conveyed to his mother without any consideration. She took the title to hold in trust for him, and unwisely made to him the $4,000 note and mortgage. The purpose was to show his interest in the land in case of her death.

The incompetent was doing janitor work in the national bank at

Kenmare. He was a poor feeble-minded cripple, subject to fits, and for safe-keeping he deposited in the bank his good note and mortgage. The cashier looked at the same, and, forgetting two of the Ten Commandments, he coveted the security and contrived to get it for nothing. For a worthless equity in a quarter section of land way off in the hills of Mountrail county he induced the incompetent to transfer to him the good note and mortgage. The transfer was absolute, and as absolute owner the plaintiff brought this action to foreclose for $4,000, and interest and costs and statutory attorneys' fees. Yet, it now appears that the transfer of the note and mortgage was merely collateral to a note for $900, and interest, which the cashier induced the incompetent to make for a quitclaim deed to the worthless equity in a quarter section mortgaged for about twice its value.

On the $900 note there was given a credit of $300 in lieu of a team of horses which was to go with the equity, but still the foreclosure suit was for a straight $4,000 and interest. It must have been brought with the hope of obtaining a default judgment against the simple-minded party,—poor business for a bank cashier to try in that way to get $5,000 from its simple-minded janitor. Truly, the transaction is on its face a gross fraud from the beginning to the end, including the attempted foreclosure. It is no way for bank cashiers to do business; it is a way for them to lose their reputation for honesty, good faith, and fairness. Good faith consists in an honest intention to abstain from taking an unconscientious advantage of another, even through the forms and technicalities of law. Even though the incompetent cripple were a person of sound mind and body, no court should sustain such a deal.

In any view of the case, it is free from all doubt; defendant has been caught with the goods; he has been caught trying to use the courts to obtain an unjust foreclosure judgment for over $5,000, with costs, and $135 attorneys' fees. The cost of this action is no adequate penance.